UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| BLUE SKY TOWERS IV, LLC<br><br>*Plaintiff,*<br><br>- *v* –<br><br>TOWN OF WALDOBORO, MAINE BOARD OF APPEALS, TOWN OF WALDOBORO, MAINE PLANNING BOARD and the TOWN OF WALDOBORO, MAINE<br><br>*Defendants.* | **COMPLAINT AND REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)**<br><br>**Civil Action No.**<br><br>________________ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)**

Plaintiff BLUE SKY TOWERS IV, LLC ("Plaintiff") on behalf of itself and for the benefit of Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by and through its attorneys Nixon Peabody LLP and Duval & Associates, LLC, hereby submits this Complaint against defendants TOWN OF WALDOBORO, MAINE BOARD OF APPEALS ("Board of Appeals"), TOWN OF WALDOBORO, MAINE PLANNING BOARD ("Planning Board") and the TOWN OF WALDOBORO, MAINE (the "Town," and collectively with the Board of Appeals and Planning Board, the "Defendants"), and respectfully alleges as follows:

## Nature of the Action

1. This action arises out of the Board of Appeals unlawful denial of Plaintiff's application for a dimensional standards variance to construct a wireless telecommunications facility for Verizon, a wireless telecommunications provider licensed by the Federal

Communications Commission ("FCC"), in order to remedy a significant gap in wireless coverage in Verizon's network along Route 220, Finntown Road, Back Cove Road, and the surrounding roads, residences, and businesses in the South Waldoboro, Maine area.

2. The proposed project consists of a 194-foot self-support tower with a 5-foot lightning rod with Verizon's panel antennas mounted at a centerline elevation of 190 feet above ground level. Verizon will encompass a 12' x 20' equipment lease area within the 60' x 60' fenced compound (the "Project") located at 2734 Friendship Road (Map R8, Lot 55) in the Town of Waldoboro (the "Property").

3. On August 20, 2026, the Board of Appeals signed a Notice of Decision Findings of Fact and Conclusions of Law denying the Plaintiff's application ("Written Decision") claiming that the Board of Appeals does not have jurisdiction to grant the desired relief, a copy of which is attached to this Complaint as **Exhibit A**.

4. The Written Decision results in an effective prohibition of personal wireless services in Waldoboro. Accordingly, the Board of Appeals denial of Plaintiff's application violates §§253(a) and 332(c)(7)(B)(i)(II) of the federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "TCA"). In addition to a declaratory judgment, Plaintiff seeks an order from this Court directing the Planning Board to approve the site plan, record all approvals in the Lincoln County Registry of Deeds, and issue all necessary permits for the construction and operation of the Project.

5. The Written Decision violates Section 332(c)(7)(B)(iii) of the TCA by denying the variance without the support of substantial evidence in the written record and effectively prohibiting the provision of telecommunications service and personal wireless services, all of

which warrant a reversal of the denial with injunctive relief mandating that the Town issue all required approvals.

6. The Board of Appeals abused its discretion and committed an error of law, and the Written Decision should be declared null and void.

7. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the TCA ("[t]he court shall hear and decide such action on an expedited basis"), Plaintiff requests expedited treatment of this Complaint.

**The Parties**

8. Plaintiff Blue Sky is a limited liability company organized under the laws of the State of Delaware and maintains its principal place of business at 352 Park Street, Suite 106, North Reading, Massachusetts 01864.

9. Defendant Board of Appeals is a duly authorized unit of the Town of Waldoboro, Maine, with an address of 1600 Atlantic Highway, P.O. Box J Waldoboro, Maine 04572.

10. The Board of Appeals has been delegated the authority, among other things, to grant dimensional standards variances under the Town of Waldoboro Land Use Ordinance dated June 10, 2025 (the "Ordinance").

11. Defendant Planning Board is a duly authorized unit of the Town of Waldoboro, Maine, with an address of 1600 Atlantic Highway, P.O. Box J Waldoboro, Maine 04572.

12. The Planning Board has been delegated the authority, among other things, to review and approve site plans under the Ordinance.

13. Defendant Town is a duly authorized municipality constituted and existing under the laws of the State of Maine, with an address of 1600 Atlantic Highway, P.O. Box J Waldoboro, Maine 04572.

14. The Town, by and through the Town's Select Board, is responsible for appointing volunteer members to the Board of Appeals and Planning Board, the adoption of and amendments to the Ordinance, and general oversight over land use development in Waldoboro.

**Jurisdiction and Venue**

15. This Court has subject matter jurisdiction over this action pursuant to: (i) 47 U.S.C. § 332(c)(7)(B)(v) of the TCA, because Plaintiff has been adversely affected and aggrieved by the Board of Appeals actions in violation of 47 U.S.C. §§ 253(a) and 332(c)(7)(B)(i)(II), and (ii) 28 U.S.C. § 1331 because this is a civil action that presents federal questions arising under the TCA.

16. This Court also has jurisdiction over this action under § 1337(a) of Title 28 of the U.S. Code because the federal statutes invoked herein are acts of Congress regulating commerce.

17. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. There is a live and justiciable controversy between the parties.

18. This Court has personal jurisdiction over the Defendants because the Defendants are domiciled within the jurisdiction of the United States District Court, District of Maine, and the claims stated herein arose in the same jurisdiction.

19. This Court also has jurisdiction under 42 U.S.C. § 1983, the Supremacy Clause and the Fifth and Fourteenth Amendments of the United States Constitution and supplemental jurisdiction with regard to the state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims stated herein arose in the judicial district for the United States District Court, District of Maine, and the Defendants are located in this District.

21. This Complaint is timely filed within thirty days of issuance of the Written Decision denying the dimensional standards variance, pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

**The Federal Interests at Issue in This Case**

22. As set forth in the TCA, Congress has declared a public need for wireless communication services such as "personal wireless services" to be deployed without delay to the public.

23. By enacting the TCA, Congress intended to "provide for a pro-competitive, deregulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies to all Americans." H.R. Rep. No. 104-458, at 206 (1996) (Conf. Rep.); *See* 1996 U.S. Code Cong. and Adm. News, p. 10.

24. The U.S. Supreme Court has recognized the key role the TCA plays in promoting the rapid deployment of infrastructure, noting that "[w]ireless telecommunications networks require towers and antennas; proposed sites for those towers and antennas must be approved by local zoning authorities. In the [TCA], Congress imposed specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities. . . ." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 293 (2013) (internal quotations omitted) ("[t]he TCA implements Congress' intent to encourage the rapid deployment of wireless telecommunications").

25. Congress implemented specific limitations on the traditional authority of state and local governments, such as requiring local municipalities to act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time,

to "stop local authorities from keeping wireless providers tied up in the hearing process through invocation of state procedures, moratoria, or gimmicks." *Masterpage Commc'ns, Inc. v. Town of Olive,* 418 F. Supp. 2d 66, 77 (N.D.N.Y. 2005) (internal quotations omitted). *See also Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 47 (1st Cir. 2009) ("The [TCA] stresses the need for speedily deploying telecommunications and seeks to get prompt resolution of disputes under the Act . . . . to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.").

26. The FCC regulates the provision of personal wireless and telecommunications service to the public.

27. The FCC grants licenses to providers of personal wireless services to use limited resources, frequencies, and spectrum allocated by the FCC for the provision of such services to the public.

28. These essential wireless services are needed to place those living and passing through the area on equal footing with homes, businesses, and travelers throughout the state who have access to wireless communication and data services, in furtherance of the national policy goal that Congress and the FCC have repeatedly confirmed (i.e., to facilitate the rapid deployment of wireless access so as to ensure that all Americans have access to this critical utility).

29. Modern wireless service is essential public infrastructure.. It is estimated that over 80% of all 911 calls in the nation are made from cell phones. *See* e.g., *9-1-1 Statistics* from NENA.org, the National Emergency Number Association https://www.nena.org/general/custom.asp?page=911statistics#.

30. Section 332(c)(7) of the TCA, while preserving state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from effectively prohibiting the provision of personal wireless services. *See Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) ("It is well-established in this Circuit that local zoning decisions that prevent the closing of significant gaps in the availability of wireless services violate the statute. This is true even where a local authority's denial of an individual application pursuant to its own local ordinances is supported by substantial evidence.") (internal citations omitted).

31. The TCA imposes a number of procedural and substantive limitations on local zoning decisions to ensure that those decisions do not frustrate the TCA's goals of promoting competition, higher quality services, and the rapid deployment of new telecommunications technologies.

32. Section 253(a) provides that:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

33. Section 332(c)(7)(B)(i) provides that:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –
>
> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

34. The FCC further interpreted "effective prohibition" in its 2018 Declaratory Ruling and Third Report and Order, *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment,* 33 FCC Rcd. 9088 (September 27, 2018), ruling that:

> [A] state or local legal requirement will have the effect of prohibiting wireless telecommunications services if it materially inhibits the provision of such services. We clarify that an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service. This test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities.

35. Section 332(c)(7)(B)(iii) requires that:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

36. Section 332(c)(7)(B)(v) provides that:

> Any person adversely affected by any final decision or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis...

37. The Project is a "personal wireless service facilit[y]" as defined by the TCA.

38. Blue Sky may bring these claims pursuant to 47 U.S.C. § 332(c)(7)(B)(v) because it is a telecommunications infrastructure developer seeking to construct the proposed Facility for Verizon, a specific wireless carrier that has committed to locate its wireless facilities on the proposed tower and supported the Application with technical evidence of need. Unlike the tower developer in *Vertex Towers LLC v. Town of York*, which had not alleged that any carrier had agreed to use its proposed tower, Blue Sky has identified a committed carrier whose provision of personal wireless services will be directly affected by the Board of Appeals' denial. Accordingly, it can readily "be discerned how the [Board of Appeals'] decision will affect [Verizon's] ability to provide wireless services." *Vertex Towers LLC v. Town of York*, 2023 WL 4868097, at *10 (D. Me. July 31, 2023); see also 47 U.S.C. § 332(c)(7)(B)(v).

39. This action is ripe for determination under the TCA and is timely filed.

**Blue Sky**

40. Blue Sky is a telecommunications infrastructure developer responsible for developing and managing personal wireless service facilities, as that term is defined in 47 U.S.C. §332(c)(7)(C)(ii) ("PWSF"), in strategic locations throughout New England and in many other areas of the country.

41. Blue Sky will construct and own the Project for the benefit of Verizon, with additional space available for up to three (3) additional wireless telecommunications providers in the future.

**Verizon's Network**

42. Verizon is a federally licensed wireless telecommunications provider and is required to have in place a system of strategically deployed cell sites to satisfy its obligations under its FCC license and 47 C.F.R. § 27.14.

43. Wireless telecommunication devices operate by transmitting a very low power radio signal between the wireless telecommunication devices and an antenna mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic apparatus located near the antenna, known as a "base station," where it is connected to traditional telephone systems, and is then routed anywhere in the world. The antennas and base station are known as a "cell site."

44. Because of the low power, a cell site is capable of transmitting to and from wireless telecommunication devices only within a limited geographic area. This limited geographic area is called a "cell." A cell site must be located within a prescribed area in order to provide coverage for the entire cell.

45. Wireless telecommunications technology requires that cells overlap somewhat in order to provide uninterrupted service. When the wireless telephone user moves into a new cell, the transmission is automatically transferred to the cell site in the new cell. If there is no cell site in the new cell, there is no wireless telecommunications service.

46. Because each cell site must be placed in such a manner as to provide service within a particular cell, and so as to provide overlapping (but not duplicate) coverage with the existing or planned cells around it, there is limited flexibility as to where a cell site can be placed. Wireless telecommunications providers conduct a thorough engineering study, including using an elaborate computer program known as a "propagation study." A propagation study shows, based on cell boundaries, topography and other factors, where a cell site needs to be located in order to provide wireless telecommunications coverage in a particular cell. The wireless telecommunication companies and RF engineers identify technologically feasible locations for the cell site within this identified area, known as a "search area."

47. Verizon currently has service inadequacies in and around the southern portion of Waldoboro, specifically in the area surrounding the Project site.

**Background**

48. Pursuant to Section 6.7.5 of the Waldoboro Land Use Ordinance ("Ordinance"), a wireless telecommunication facility is allowed in the Rural Zoning District upon the issuance of site plan approval from the Planning Board.

49. However, pursuant to Section 10.28.4.1 of the Ordinance, a wireless telecommunications facility is permitted only within 300 yards of Route 1 (the "300-Yard Restriction").

50. On February 14, 2026, the Plaintiff attended a site visit at the Property during the conducting of its required balloon test. After this site visit, there was much discussion with the Town Planner and Town Manager concerning the appropriate relief for the Project with the direction at the time that a waiver from the Planning Board was the appropriate relief.

51. The Plaintiff filed an application for Site Plan Review from the Planning Board requesting a waiver from Section 10.28.4.1 of the Ordinance on March 4, 2026.

52. The application provided a description of the Project, together with the following exhibits:

- Certificate from the State of Maine, Department of the Secretary of State, certifying that Blue Sky Towers IV, LLC is qualified to do business in the State of Maine
- Exhibit 1 – Ground Lease Agreement and Assignment
- Exhibit 2 – Zoning Drawings
- Exhibit 3 – RF Report (Verizon Wireless)
- Exhibit 4 – Calculated RF Emission Report (Verizon Wireless)
- Exhibit 5 – FCC Licenses (Verizon Wireless)
- Exhibit 6 – Alternative Site Analysis
- Exhibit 7 – FCC Tower Registration Database Tower Inventory
- Exhibit 8 – Statement from the Applicant (Blue Sky Towers IV, LLC)
- Exhibit 9 – Removal Bond Estimate
- Exhibit 10 – Determination of No Hazard to Air Navigation
- Exhibit 11 – Photo Simulations
- Exhibit 12 – Generator Equipment Specifications
- Exhibit 13 – Tower Collapse Letter

53. On March 25, 2026, the Town Planner notified the Plaintiff that the Application was complete.

54. The Plaintiff was scheduled for a public hearing before the Planning Board on April 9, 2026.

55. On April 8, 2026, the Town Planner called the Plaintiff and stated that the Town Attorney had not yet provided her opinion on waiver vs. variance and requested the Plaintiff agree to postpone the public hearing until such time as the Town Attorney could provide her

opinion. The Plaintiff consented. Plaintiff had filed its preliminary application with the Town in October of 2025 requesting site plan review from the Planning Board and a dimensional standards variance from the Board of Appeals as the Plaintiff believed this was the appropriate relief required.

56. On April 17, 2026, the Town Planner informed the Applicant that the Town Attorney agreed with the Applicant that a dimensional variance was the appropriate relief rather than a waiver.

57. On April 27, 2026, the Applicant filed a variance application to the Board of Appeals and a supplemental narrative to include both the dimensional standards variance from the Board of Appeals and Site Plan Approval from the Planning Board. The Applicant requested a joint meeting before the Board of Appeals and the Planning Board. The request was denied.

58. A hearing for a dimensional standards variance was scheduled with the Board of Appeals for May 21, 2026, and a hearing for Site Plan Review with the Planning Board was scheduled for June 11, 2026.

59. The March 4, 2026, application, together with Plaintiff's additional application materials submitted on April 27, 2026, July 09, 2026, August 04, 2026, August 13, 2026, and August 20, 2026, are collectively referred to herein as the "Application."

**The Town's Review of the Plaintiff's Application**

60. The Board of Appeals first considered the Application on May 21, 2026. During this hearing, prior to the Plaintiff's presentation, the Board of Appeals permitted an abutter in opposition to speak for over twenty minutes, with limited time permitted for the Plaintiff to detail how the 300-Yard Restriction results in an effective prohibition of wireless service in this area of South Waldoboro, and a blanket ban on new towers.

61. On June 09, 2026, at a Town Meeting, the Town voted to amend the Ordinance (the "New Ordinance"). In conversations with the Town and documents obtained from the Town showing Land Use Ordinance Proposed Updates, the Town was contemplating removing the 300-Yard Setback and allowing wireless communications facilities "anywhere except downtown and historic village locations."

62. However, ultimately the New Ordinance retained the 300-Yard Setback, unchanged from the previous Ordinance.

63. The Plaintiff was scheduled to appear before the Planning Board on June 11, 2026. On June 09, 2026, the date of the Town Meeting to amend the Ordinance, the Plaintiff was informed that the June 11, 2026, hearing could not occur because of the Town's failure to properly notice the hearing. The hearing was rescheduled for July 9, 2026, at 5:00 PM with the Board of Appeals scheduled to convene directly following at 7:00 PM.

64. At the July 9, 2026, hearing of the Planning Board, the Planning Board Chairman advanced from the Planning Board table to the lectern and delivered a forty-page presentation in opposition to the Plaintiff's Application, purportedly as an individual rather than the Chairman, and then returned to the Planning Board table, all before the Plaintiff was permitted to present its Application and evidence. When asked whether the New Ordinance removed the 300-Yard Restriction, the Chairman stated no, that it was specifically left in the New Ordinance *because* of the Plaintiff's application.

65. Minutes prior to opening the July 9, 2026 hearing, the Town Planner provided the Plaintiff with a Memorandum to the Town of Waldoboro Board of Appeals from Amy K. Tchao, Attorney for the Board of Appeals ("Town Attorney"), which maintained that the Board of Appeals does not have jurisdiction over the requested dimensional standards variance

because the 300-Yard Restriction is not a setback, and the Board of Appeals should not determine whether the 300-Yard Restriction creates an effective prohibition of wireless service under the TCA as this is a question of federal law decided by the courts.

66. At the July 9, 2026 Planning Board hearing, the Plaintiff discussed the timeline of the Application, walked through each of the fifteen exhibits to the Application, and submitted into the record a landscaping plan, which had been discussed with Town Staff and the Planning Board prior to formally filing the Application. In addition, the Plaintiff submitted two new exhibits, (i) a NEPA Report Summary and (ii) an Impact Study, prepared by Vern J. Gardner, MAI, SRA.

67. Next, an RF Engineer from C Squared Systems presented coverage maps on behalf of Verizon demonstrating that Verizon has a significant gap in coverage in this area of Waldoboro, that no site located within the 300-Yard Restriction can remedy that gap, explaining what is considered a gap in service, how it is determined, and how technology, specifically satellites will not replace towers.

68. ProTerra Design Group, the Project engineer, then presented the site plan in detail.

69. The Planning Board continued the hearing until August 13, 2026.

70. Before the July 9 hearing ended, the Town Attorney went on record to the Planning Board stating it was her position that the Plaintiff was now subject to the New Ordinance. The Plaintiff voiced its objections to this determination.

71. Prior to the Planning Board closing the hearing on July 9, 2026, and despite the fact that the Board of Appeals had a noticed hearing to hear the Application directly following the Planning Board hearing, the Chairman of the Board of Appeals left the meeting room and

failed to open the scheduled Board of Appeals hearing, call a quorum, or continue it to another date. The Board of Appeals hearing was rescheduled for August 6, 2026.

72. By email dated August 4, 2026, the Town Planner stated that the August 6, 2026, hearing where the Application was going to be heard by the Board of Appeals was cancelled and asked whether the Plaintiff could attend on August 20, 2026.

73. On August 4, 2026, the Plaintiff submitted a Supplemental Statement in Support of Application for Site Plan Review and Variance, and a letter requesting that the Chairman of the Planning Board recuse himself for bias, conflict of interest, and a violation of the Plaintiff's state and federal due process rights.

74. The Plaintiff's Supplemental Statement submitted on August 4, 2026 maintained that (i) given the substantive hearing by the Board of Appeals prior to the adoption of the New Ordinance, the Plaintiff's rights vested under the Ordinance adopted on June 10, 2025; (ii) even if the Plaintiff's rights had not vested at the May 21, 2026 hearing, the Plaintiff equitably acquired vested rights as a result of the Town's bad faith and discriminatory enactment of the New Ordinance; and (iii) the Town should consider whether the 300-Yard Restriction results in an effective prohibition of wireless service under the TCA and a blanket ban on wireless facilities across most of Waldoboro in order to preserve the Applicant's due process rights and protections under Federal law, while potentially avoiding litigation costs and preserving judicial resources.

75. At the August 13, 2026, Planning Board hearing, the Chairman of the Planning Board recused himself from sitting on the Plaintiff's Application. The Planning Board then proceeded to vote that the Plaintiff's Application remain under the Ordinance adopted on June 10, 2025.

76. Throughout the Application process and contained in the Application, the Plaintiff presented technical evidence and RF coverage maps demonstrating that there is nowhere a tower could be located within the 300-Yard Restriction which would adequately address the significant coverage gap in Waldoboro.

77. At the August 20, 2026, Board of Appeals hearing, the Plaintiff explained why denying the variance would constitute an effective prohibition of wireless services in violation of the TCA and urged the Board of Appeals to consider this issue, arguing that limiting effective prohibition claims to the courts alone is an inefficient use of town resources and places unnecessary burdens on the judicial system.

78. Notwithstanding the undisputed need for the Project and the compelling legal grounds for granting the Application, on August 20, 2026, the Board of Appeals unanimously denied the dimensional standards variance and declined to consider whether its decision constituted an effective prohibition of wireless service in violation of the TCA.

**<u>Decision</u>**

79. The Written Decision was issued after the meeting on August 20, 2026.

80. In the Written Decision, the Board of Appeals concluded that it lacked jurisdiction to grant a dimensional standards variance because the 300-Yard Restriction is not a setback.

81. The denial constitutes an "effective prohibition" under the TCA.

82. The denial ignores the facts in the record before it, is conclusory, is not supported by any evidence in the written record and is an abuse of its discretion and an error of law.

**<u>Irreparable Injury, Public Interest, and Balance of Hardships</u>**

83. Plaintiff has demonstrated the need for injunctive relief herein, including an order directing the Planning Board to approve the site plan, record all approvals in the Lincoln County Registry of Deeds, and issue all necessary permits for the construction and operation of the Project.

84. As a result of the Ordinance and the Board of Appeals actions, the Plaintiff, Verizon, their customers, and the public will suffer irreparable harm absent the relief requested herein. The injury to Verizon affects: (i) its ability to provide emergency services, businesses, and the general public with access to the modern, reliable wireless network they need, expect, and rely upon; (ii) the full use of its existing FCC license and business investments; and (iii) its customer goodwill and business reputation. The injury to the Plaintiff similarly affects the goodwill of its wireless provider customers and its business reputation.

85. The harm that Plaintiff has suffered and is suffering is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

86. Moreover, the public interest in promoting competition in the telecommunications arena and the rapid deployment of this evolving technology – the express goal of the TCA – has been irreparably harmed and will continue to be irreparably harmed by the Town's unlawful acts.

87. In addition, wireless telecommunications are an important component of public safety and emergency response systems and provide a vital alternative to traditional land lines during times of public crisis. By preventing Plaintiff from constructing the Project, which is necessary to provide reliable wireless services, the Town is causing irreparable harm to the public with deprivation or delay of reliable emergency communications.

88. In contrast to the immediate and irreparable injury being suffered by Plaintiff,

Verizon, and the public, the Town will suffer no significant injury if the Court issues the requested injunctive relief.

**Allegations Supporting Declaratory Relief**

89. A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. Defendants' actions are in violation of the TCA and state law and Plaintiff is entitled to all of the approvals necessary to proceed with the Project.

90. Plaintiff, Verizon, and the public have been and will continue to be adversely affected by the Board of Appeals 's unlawful acts and any further delay to the Project.

91. Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Plaintiff's rights and the Town's duties and authority.

**COUNT I**

**Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)—Effective Prohibition**

92. Plaintiff realleges and incorporates by reference all preceding paragraphs.

93. Pursuant to 47 U.S.C. §§332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." (emphasis added).

94. The First Circuit has established a two-step process for determining whether an effective prohibition has occurred. *Vertex Towers LLC v. Town of York*, 2023 WL 4868097, at *8 (D. Me. 2023). First, the Court must determine whether a "significant gap" in coverage exists, considering factors such as "the physical size of the gap, the area in which there is a gap, the number of users the gap affects, and whether all of the carrier's users in that area are similarly affected by the gaps." *Id.* Second, the Court must decide whether there are no feasible

alternatives to close the gap in coverage other than the applicant's proposal such that the locality's decision constitutes an effective prohibition. *Id.* (citations and internal quotation marks omitted). *See also Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 40 (1st Cir. 2014) (stating that a plaintiff will prevail on an "effective prohibition" claim pursuant to § 332(c)(7)(B)(i)(II) if it shows that local authorities have rejected the only feasible plan to close a gap in coverage and "further reasonable efforts [to find another solution] are so likely to be fruitless that it is a waste of time even to try."); *Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999) ("If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial.").

95. Plaintiff firmly and irrefutably established that a significant coverage gap exists in the Town of Waldoboro.

96. First, the RF Report enclosed as Exhibit 3 to the Application demonstrated Verizon's significant coverage gap in southern Waldoboro. Verizon's existing wireless facilities do not provide sufficient coverage and capacity in this area due, in large part, to the distance between existing sites, intervening topography, and user traffic demands. As detailed in the Application, this coverage gap affects areas along Route 220, Finntown Road, Back Cove Road, and the surrounding roads, residences, and businesses in the South Waldoboro, Maine area.

97. Second, Attachments A through C in Exhibit 3 illustrate the extent of this gap. In these propagation maps, areas depicted in white have poor service quality, low data throughput, and a substantial likelihood of unreliable service. The remaining colors—green, yellow, and grey—represent scaled coverage levels, with green indicating the strongest signal and grey indicating the weakest. As shown in both attachments, a significant portion of the 700 MHz LTE

and 2100 MHz LTE coverage is white or grey, well below the threshold necessary for Verizon to provide reliable service to the south Waldoboro.

98. Plaintiff also established that no feasible alternatives exist to close the coverage gap other than the Project.

99. No existing towers are located in the Waldoboro search area, and nearly all parcels surrounding the Property are unsuitable because they cannot meet setbacks, are undersized, do not provide any vegetative buffer, and/or sit at a lower elevation that would necessitate a tower exceeding the proposed tower's height of 194 feet.

100. Finally, the record makes clear that further efforts to identify an alternative site would be fruitless. The permitted area along Route 1 is situated approximately 5 miles from the significant coverage gap in Waldoboro, and any coverage provided by a facility within the 300-Yard Restriction would serve an entirely different geographic area than that addressed by the Project.

101. However, the Board of Appeals and Town Attorney have repeatedly stated, the Project is not permitted anywhere in Town except within the 300-Yard Restriction, and the Board of Appeals has no authority to grant a dimensional standards variance from this restriction. There is no alternative location outside the 300-Yard Restriction but for the Project site that could adequately fill the coverage gap, but, even if one were, it would be subject to the same prohibition. Further reasonable efforts to find another solution are therefore so likely to be fruitless that it would be a waste of time to try.

102. Plaintiff provided extensive and unrefuted evidence that there is a significant gap in coverage and there are no feasible alternatives to close the gap in coverage other than the Project. The Board of Appeals denial therefore constitutes an effective prohibition in violation of

§ 332(c)(7)(B)(i)(II) of the TCA. The Written Decision must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

## COUNT II

### Violation of 47 U.S.C. § 253(a)–The Ordinance, On Its Face and as Applied to the Application, is an Effective Prohibition of Service

103. Plaintiff realleges and incorporates by reference all preceding paragraphs.

104. 47 U.S.C. § 253(a) provides that "[n]o state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." *See also ExteNet Sys., Inc. v. City of Cambridge*, 481 F. Supp. 3d 41, 56 (D. Mass. 2020) ("In the First Circuit, a plaintiff may meet its burden of demonstrating that a regulation effectively prohibits its ability to provide wireless services by showing the mere possibility of an effective prohibition, rather than by showing an actual effective prohibition.").

105. If (1) wireless telecommunications facilities may only be sited within the 300-Yard Restriction; (2) there are significant coverage gaps that cannot be remedied within the 300-Yard Restriction; and (3) the Board of Appeals lacks authority to grant variances, then the 300-Yard Restriction is a de facto blanket ban on the provision of wireless service across most of Waldoboro, in direct violation of federal law. *See Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999) ("Suppose, for example, that in denying

an individual permit, the town zoning authority announces that no towers will ever be allowed or sets out criteria that no one could meet. The fact that the ban is embodied in an individual decision does not immunize it . . . . If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial.").

106. The 300-Yard Restriction lacks any rational connection to legitimate municipal interests under the TCA, such as public safety, quality universal service, and/or consumer rights, and does not constitute an exercise of a local authority's right to manage public rights of way or receive compensation for their use. Construing this restriction to categorically prohibit all telecommunications facilities beyond a narrow band along Route 1 produces an absurd result and is preempted by the TCA. *See Sprint Spectrum, L.P. v. Town of Ogunquit*, 175 F. Supp. 2d 77, 91 (D. Me. 2001) ("[a]n ordinance should not be construed to create absurd, inconsistent, unreasonable or illogical results.").

107. Moreover, the Town's wrongful delays and conflicting directives from the first time the Application was provided for the Town's preliminary review in October of 2025 have effectively barred the deployment of telecommunications service in Waldoboro. The Town Attorney's failure to render a timely legal opinion resulted in the moving of the first public hearing on this matter from April 9, 2026 to May 21, 2026. While initially being directed to file a waiver from Section 10.28.4.1, then subsequently receiving guidance stating that a dimensional standards variance was the appropriate relief, the Town Attorney later stated in a memo provided to the Applicant at the July 09, 2026 hearing that the Board of Appeals could not grant a dimensional standards variance from the 300-Yard Restriction.

108. The delay was further exacerbated when, despite requests from the Applicant, the Town refused to hold a joint hearing and separately set hearings for May 21, 2026, with the Board of Appeals and June 11, 2026, with the Planning Board.

109. At the May 21, 2026, hearing before the Board of Appeals, the Board intentionally attempted to prevent the Plaintiff from presenting its Application in an effort to force the Application under the New Ordinance, which was set to be approved on June 09, 2026, under criteria that no applicant could ever meet. While directly being told that the New Ordinance would remove the 300-Yard Restriction (as documented in the Town's redlines to the Ordinance), the Plaintiff was then specifically told by the Chairman of the Planning Board that the 300-Yard Restriction was retained in the New Ordinance because of the Plaintiff's Application.

110. On June 09, 2026, the day of the Town Meeting to amend the Ordinance, the Applicant was informed that the June 11, 2026, meeting could not occur as a result of failed public notice by the Town. At the July 09, 2026, hearing, the Planning Board Chairman presented a 40-page presentation in opposition to the Application, personally, before allowing the Plaintiff to present, subjecting the Application to unfair prejudgment and prejudice.

111. The Board of Appeals, also scheduled to hear the Application that evening, left the room without ever even opening the scheduled public hearing.

112. On August 20, 2026, the Board of Appeals and the Town Attorney came to the hearing with a typed denial, ready for signature before deliberation had even commenced, and summarily denied the Application, despite the evidence that such as denial would result in an effective prohibition and the Board of Appeals could consider effective prohibition to avoid such

an absurd result. These procedural delays and impermissible maneuvers consumed months of valuable time.

113. The 300-Yard Restriction and the Town's application review process have the effect of prohibiting Verizon's ability to provide interstate and/or intrastate telecommunications service in Waldoboro and are in violation of, and preempted by, § 253(a) of the TCA and must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

**Count III**

**Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – the Board of Appeals Denial Was Not Based on Substantial Evidence in the Written Record**

114. Plaintiff realleges and incorporates by reference all preceding paragraphs.

115. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

116. No evidence in the record supports the Written Decision.

117. The Board of Appeals finding that it lacked jurisdiction to approve a dimensional standards variance is a legal conclusion and categorical restriction. It is not a review of the Application nor analysis of evidence as required under § 332(c)(7)(B)(iii).

118. Plaintiff provided extensive and unrefuted evidence of Verizon's significant coverage gap and lack of alternative feasible methods to satisfy that coverage gap.

119. The Board of Appeals did not gather or submit any data to dispute Plaintiff's evidence.

120. The Written Decision eschews the actual factual evidence in the written record and rests instead on an erroneous legal opinion regarding the Board's lack of jurisdiction to perform the analysis required by § 332(c)(7)(B)(iii). Moreover, the procedural history and record demonstrate that those stated grounds were pretextual and/or the product of a predetermined process rather than reasoned application of the governing standards to the evidence submitted by the Plaintiff.

121. The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Application.

122. The Written Decision is in violation of and preempted by 47 U.S.C. § 332(c)(7)(B)(iii) and must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

## Count IV

### Maine Rule 80B – The Board of Appeals Abused its Discretion and Committed an Error of Law by Failing to Consider Whether its Denial Constituted an Effective Prohibition of Wireless Services

123. Plaintiff realleges and incorporates by reference all preceding paragraphs.

124. The Board of Appeals abused its discretion and committed an error of law, and the Written Decision should be declared null and void. *Mack v. Town of Cape Elizabeth*, 463 A.2d 717, 719 (Me. 1983) (stating that when a court "acts as an appellate court reviewing the

action of the [Zoning Board of Appeals], we examine the record developed before the [Zoning Board of Appeals] to determine if it abused its discretion, committed an error of law or made findings not supported by substantial evidence.”).

125. First, the 300-Yard Restriction is preempted by the TCA and is in violation of 30-A M.R.S.A. § 3012 (“A municipality may not adopt or enforce any ordinance or regulation that is preempted by a Federal Communications Commission regulation that states that local regulations that involve placement, screening or height of radio antennas based on health, safety or aesthetic considerations must be crafted to reasonably accommodate amateur radio communications and to represent the minimum practicable regulation to accomplish the municipality's legitimate purpose.”).

126. Second, the Board of Appeals abused its discretion and committed an error of law by failing to consider whether its denial constituted an effective prohibition of wireless services.

127. The Board of Appeals and the Town Attorney contended that *Vertex Towers LLC v. Town of York*, precluded the Board from determining whether its denial constituted an effective prohibition of wireless services. 2023 WL 4868097, at *7 (D. Me. 2023). This is a misreading of the case. In *Vertex*, the Court reviewed whether the Town of York Zoning Board of Appeals’ conclusions under state law were supported by substantial evidence, which is subject to a different standard than effective prohibition. The Court correctly noted that a board is not required to consider effective prohibition when determining whether substantial evidence supports a denial. *Vertex* does not, however, stand for the proposition that once a board denies an application in accordance with the relevant standards set forth by state and local law, the board is then precluded from separately considering whether the denial constitutes an effective prohibition. In fact, the *Vertex* court noted that the board did consider whether denial of a tower

company's variance request without a carrier tenant, would amount to an effective prohibition under federal law. To find otherwise is an inefficient use of town resources and places unnecessary burdens on the judicial system.

128. The Board of Appeals abused its discretion and committed an error of law by failing to consider whether its denial constituted an effective prohibition of wireless services, and the Written Decision must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

**WHEREFORE**, by reason of the foregoing Counts, Plaintiff respectfully requests entry of a judgment and order as follows:

1. Granting expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2. On the First Count, a judgment declaring that: (1) the Board of Appeals has effectively prohibited the provision of personal wireless services in violation 47 U.S.C. § 332(c)(7)(B)(i)(II) of the TCA and the Written Decision is therefore void and invalid; (2) the Project is permitted at the Property; and (3) the Town may consider whether a denial is an effective prohibition in violation of the TCA in making a final decision on an application for a wireless telecommunications facility. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County

Registry of Deeds; and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

3. On the Second Count, a judgment declaring that: (1) the 300-Yard Restriction effectively prohibited the provision of personal wireless services in violation 47 U.S.C. § 253(a) of the TCA and the 300-Yard Restriction is therefore void and invalid; (2) the Project is permitted at the Property; and (3) the Town may consider whether a denial is an effective prohibition in violation of the TCA in making a final decision on an application for a wireless telecommunications facility. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds; and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

4. On the Third Count, a judgment declaring that: (1) the Written Decision was illegal as it was not based on substantial evidence contained in the written record in violation of the TCA; and (2) the Project is permitted at the Property. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds; and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

5. On the Fourth Count, a judgment declaring that: (1) the 300-Yard Restriction violates 30-A M.R.S.A. § 3012; (2) the Board of Appeals abused its discretion and committed an

error of law and the Written Decision should be declared null and void; and (3) the Project is permitted at the Property. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resumption of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds; and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

6. Awarding Plaintiff its costs, expenses, and attorney fees, and any and all other damages and interest to which Plaintiff is lawfully entitled, together with such other and further relief as the Court deems just and proper.

Dated: September 11, 2026

NIXON PEABODY LLP

By: *s/ W. Daniel Deane*

W. Daniel Deane (ME No. 005508)
900 Elm Street
Manchester, NH 03101-2031
(603)-628-4047
(866)-947-1243
ddeane@nixonpeabody.com
and
Earl W. Duval, Esq.
(*pro hac vice* certification forthcoming)
Duval & Associates, LLC
92 Bumfagon Road
Loudon, NH 03307
(617) 676-7792
eduval@dkt-legal.com

*Attorneys for Plaintiff*